BANKERS LIFE COMPANY V. BRECKENRIDGE INDEPENDENT SCHOOL DISTRICT ET AL.

No. 7129. Decided October 28, 1936.
(97 S. W., 2d Series, 933.)

204

*Coker, Rhea & Vickrey,* of Dallas, for appellant.

The ministerial duty being upon the trustees of said district to levy the maximum tax of 50 cents for certain years for the benefit of its bonds and it having failed to do so, there is no legal impediment to its being required to make up such deficient levy in future years in addition to levying the maximum tax for those years as provided by law. Louisiana v. New Orleans, 215 U. S., 170, 54 L. Ed., 144; People v. Miller, 177 N. Y., 51, 69 N. E., 124; City of Austin v. Cahill, 99 Texas, 172, 88 S. W., 542.

*Harrell & Allison, Floyd Jones, Robert E. Bowers,* all of Breckenridge, for appellee.

One purchasing bonds with the knowledge that the issuing district has the authority to issue, and that there is the likelihood that it will issue other bonds in the future, cannot be said to be misled if the district does, later, issue additional bonds. Hoehler v. Worthen Co., 154 Ark., 444, 243 S. W., 822; Sovereign Camp W. O. W. v. Lake Worth Inlet Dist., 119 Fla., 782, 161 So., 717; In re Imperial Irr. Dist., 10 Fed. Supp., 832.

*Thompson, Wood & Hoffman, Clay, Dillon & Vandewater,* of New York, *Chapman & Cutter,* of Chicago, *W. P. Dumas, Millard Parkhurst, John D. McCall, John H. Bickett, Jr., Hamilton, Lipscomb & Wood, H. P. Kucera,* all of Dallas, *Underwood & Strickland,* of Amarillo, *Williams, Nelson & English,* and *William F. Kenny* and *Charles & Trauernicht,* all of St. Louis, Mo., *Fulbright, Crooker & Freeman,* and *C. A. Leddy, R. R. Lewis, Walter E. Boyd,* all of Houston, *T. D. Cobbs, Leo Brewer,* both of San Antonio, *Elcock & Martin,* of Wichita, Kan., *R. E. Rouer,* of Fort Worth, *A. L. Love* and *Hart, Patterson, Hart & Brown,* of Austin, *Darden Burleson & Wilson,* of Waco, *William McCraw,* Attorney General, *Victor W. Bouldin* and *Effie Wilson-Waldron,* Assistants Attorney General, briefed briefs as amicus curiae.

MR. JUSTICE CRITZ delivered the opinion of the court.

This case is before us on certified questions from the Court of Civil Appeals for the Eleventh District, at Eastland. The certificate is as follows:

"The Breckenridge Independent School District has heretofore by authority of Chap. 24, Acts 37th Leg., General Laws 1921, page 56, under the authorization of four independent elections, issued and has outstanding four series of bonds, all dependent for payment of principal and interest upon the power of the district to levy a maximum tax of 50¢ on the one hundred dollars valuation of all taxable property of said district. Some or all of these bonds were subsequently refunded, and a part of the second series are owned by the appellant, Bankers Life Company. Since 1931 the total of the outstanding bonds required the levy of 50¢ on the one hundred dollars valuation of property to pay current interest and create a proper proportion of sinking fund, but the school authorities instead of levying 50¢, levied for such purposes only 20¢ for 1931, 35¢ for 1932, 35¢ for 1933 and 33½¢ for 1934. There was at the same time levied for maintenance purposes, one dollar on the one hundred dollars valuation of property, less the amount levied for each of said years for bond purposes as

aforesaid. Although all bonds were legally issued, the property values of the district have been decreased from $10,293,000 to $5,552,900, in consequence of which, the maximum tax of 50¢ on the one hundred dollars valuation of all taxable property, had it been levied, was insufficient since 1932 to pay the current interest on all bonds of all the several issues and provide the required proportion of sinking fund with which to pay the principal at maturity.

"This suit was brought by Bankers Life Company against said school district and its officials seeking judgment for matured installments of principal and interest upon the bonds held by it, and seeking to require by mandamus that the school authorities levy the full 50¢ on the one hundred dollars valuation of property to pay the interest on, and principal of, the bonds held by it, and to require the levy in future years of the difference between the former insufficient levies for bond purposes and the rate of 50¢; and to require that out of future collections of delinquent taxes the proceeds represented by a tax of 50¢ on the one hundred dollars valuation be paid in and appropriated to the payment of interest and sinking fund upon said bonds; and further, to require restitution from future levies and collections of the amounts wrongfully appropriated by the levying of less than 50¢ on the one hundred dollars valuation of property for bond purposes and the levying of more than 50¢ for maintenance purposes.

"The plaintiff contended that it was entitled, in effect, to priority in the payment of principal and interest due it over the holders of subsequent bond issues. The trial court denied such right of priority and decreed that the holders of all the several issues of bonds be paid prorata and that the total of 30¢ on the one hundred dollars valuation which for two years should have been levied for bond purposes in order to make up the required 50¢ on the one hundred dollars valuation should be made up in future years by levying 7½¢ per annum on the one hundred dollars valuation in the years 1936, 1937, 1938 and 1939. A fuller statement of the case and the issues involved will be found in the opinion of this court rendered on May 8, 1936, a copy of which is hereto attached.

"Motions for rehearing are pending and it has been earnestly insisted by the parties, as well as amicus curiae appearing herein, that the questions involved are of such great importance that they should be determined by the Supreme Court before we pass upon the motions for rehearing and enter final judgment in the case.

"To this end we deem it advisable to certify to your honors the following questions:

"1. Since the statutes authorize the school district annually to levy, assess and collect a tax not exceeding one dollar on the one hundred dollars valuation of the taxable property of the district for maintenance purposes, and a tax not exceeding 50¢ on the one hundred dollars valuation for the purpose of paying interest and to create a sinking fund for the payment of bonds, but with further provision that the maximum rate of tax for both maintenance and bond purposes shall not exceed one dollar, and that whatever amount is levied for bond purposes within the authorized limit shall operate to decrease the amount authorized to be levied for maintenance purposes to the difference between the amount levied for bond purposes and one dollar, and since the statute further requires that before the issuance of any bonds provision shall be made for the annual levy, assessment and collection of a tax sufficient to pay the interest on said bonds and the principal at maturity: does the last named provision constitute such a preemption and appropriation of the maximum taxing power of the district, to whatever extent necessary, for the payment of the interest and principal of bonds, as to give, in effect, priority to the first or earlier issues over bonds of a second or subsequent issues in the event the property valuations of the district decrease to such an extent that the maximum tax of 50¢ is insufficient to pay the interest and principal upon all bonds?

"2. Where under the facts above stated the school district levies the maximum tax of one dollar for both maintenance and bond purposes, but levies for bond purposes less than 50¢ and less than the tax required upon the existing valuations to pay interest and the proper proportion of principal, has the district the authority to levy, assess and collect in future years, in addition to the regular levies for all purposes for such future years, the difference between the insufficient levies for said past years for bond purposes and the maximum of 50¢ which should have been levied, and did the trial court properly so order?

"3. Has this court correctly held, as shown in our said opinion, that out of delinquent taxes for the years in which the levies for bond purposes were insufficient the school district should be required to transfer to the bond fund the proceeds of 50¢ on the one hundred dollars valuation of taxable property, although the levy of the maximum one dollar was in different proportion for maintenance and bond purposes? In other

words, should the proceeds from the collection of delinquent taxes be prorated as between the bond and maintenance funds in the proportion that they should have been levied; namely, 50¢ for bond purposes and 50¢ for maintenance purposes?

"4. Has this court correctly held, as shown by its said opinion, that for the years when less than 50¢ on the one hundred dollars valuation of property was levied for bond purposes, but when, presumably, since the contrary does not appear, the amount levied was sufficient, the court has no authority to require said school district to appropriate out of delinquent taxes for said years for the payment of principal and interest of bonds more than was levied for said purposes for said years; or, in other words, to make a different disposition of the taxes collected than upon the basis of the several levies for said years for maintenance and bond purposes?

"5. If we are correct in our conclusion that the statute in effect provides a priority in favor of the holders of the first or earlier series of bonds, then in a suit like this by the holder of a second issue, should the school authorities be required to appropriate all the proceeds to the plaintiff's demands, or should the order of appropriation be made subject to the demands of the holders of the first or prior bond issues?"

### OPINION.

It appears from the certificate and record that the independent school district at bar has outstanding several issues of bonds, all issued in due compliance with law, and by authority of several elections duly held. The first issue of these bonds was voted and issued in 1921, the second in 1926, and the third in 1928. Also, it seems that prior to 1921 there had been some small issues of bonds by this district; but all of these bonds had been fully paid prior to the beginning of this litigation, except a balance of about $6,000.00 on an issue of 1917. This balance was absorbed in a refunding issue of 1934. We do not make any further detailed statement of outstanding bonds. It is not necessary, as will later appear in this opinion.

As already stated, it appears that all of the above bonds were duly and legally voted, issued, and sold; and all constituted legal and valid obligations of the district at the several times of issuance.

Before proceeding further we deem it expedient to quote certain portions of Chapter 24, Acts Regular Session, 37th Legislature, page 56 et seq.

"Sec. 13.  The trustees of any independent school district that has been, or may hereafter be incorporated under general or special laws, for school purposes only, shall have the power to levy and collect an annual ad valorem tax not to exceed one dollar on the one hundred dollars valuation of taxable property of the district, for the maintenance of schools therein, and a tax not to exceed fifty cents on the one hundred dollars for the purpose of purchasing, constructing, repairing, or equipping public free school buildings within the limits of such district, and the purchase of the necessary sites therefor; provided, that the amount of maintenance tax, together with the amount of bond tax of the district, shall never exceed one dollar on the one hundred dollars valuation of taxable property; and provided further that no such tax shall be levied, and no such bonds issued until after an election shall have been held wherein a majority of the tax-paying voters, voting at said election, shall have voted in favor of the levying of said tax, or the issuance of said bonds, or both, as the case may be, and which election shall be held in accordance with the subsequent sections of this Act.

"Sec. 14.  All independent school districts providing for public free school improvements as contemplated by the preceding section, shall have the power to issue coupon bonds of the district in such sum or sums as may be authorized at an election held therein in accordance with the provisions of this Act for the purpose of purchasing, constructing, repairing or equipping public free school buildings within the limits of such district, and the purchase of the necessary sites therefor; provided that the aggregate amount of bonds issued for such purposes shall never reach an amount where a tax of fifty cents on the one hundred dollars valuation of taxable property will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity; provided further that such bonds shall bear interest not exceeding six per cent per annum, and may be made payable, serially or otherwise, not exceeding forty years from their date, but when the school buildings are to be of wood material, the bonds herein provided for shall not run for a longer period than twenty years from their date; and provided further that the specific rate of tax to be levied for the payment of such bonds need not be determined at the election.

\*   \*   \*   \*   \*   \*   \*

"Sec. 19.  Where a bond election in an independent school district shall have resulted in favor of the issuance of bonds

and levy of the tax in payment thereof, the board of trustees of the district, after such result has been declared, shall make an order directing the issuance of the bonds of such district and provide for the levy and collection of a tax annually of sufficient amount with which to pay the interest and provide a sinking fund with which to pay such bonds at maturity; and such bonds shall state upon their face the purpose for which they are issued. Said bonds shall be issued in the name of the independent school district, shall be signed by the president of the board of trustees of such district, and shall be countersigned by the secretary of such district, and the seal of the district shall be affixed to each bond.

\* \* \* \* \* \* \*

"Sec. 25. Where a maintenance tax has been voted no election to revoke, modify or increase the same shall be held until two years from the date of the election authorizing such maintenance tax. An election to revoke, modify or increase such maintenance tax, when permissible, may be obtained and held substantially as herein provided for an election to authorize such tax; provided, however, that no change or modification in such maintenance tax shall ever affect any bond tax authorized by such district; and provided further, that if the rate of the bond tax, together with the rate of maintenance tax voted in the district, shall at any time exceed one dollar on the one hundred dollars valuation, such bond tax shall operate to reduce the maintenance tax to the difference between the rate of the bond tax and one dollar."

The above statutes, so far as applicable here, are substantially contained in Vernon's Texas Statutes, 1936, Article 2784 et seq.

■ Under the above statutes an independent school district of the class of the district at bar is authorized to annually levy and collect ad valorem taxes, for all school purposes, not exceeding $1.00 on the $100.00 of its assessed valuation. Also, under such statutes, such a district is authorized to annually levy and collect, for bond purposes, ad valorem taxes not exceeding 50¢ on the $100.00 of its assessed valuations. However, in no event can the district exceed a tax levy of $1.00 for all purposes, maintenance and bond. Likewise, the district cannot exceed a tax levy of 50¢ for bond purposes. If the district has no bonds outstanding, it can levy the full $1.00 rate for maintenance purposes, or any rate under that sum. If such district has bonds outstanding, the rate necessary to service such bonds,

not exceeding 50¢, must be levied; and any difference between the bond levy, or levies, and the maximum taxing rate of $1.00, can be levied for maintence purposes. It follows that, where bonds have been voted and issued, the legal taxing power of the district for maintenance purposes is reduced from the extreme limit of $1.00 to the difference between that sum and the amount of the bond levy. Of course, the authority to levy maintenance taxes cannot be reduced by bond levies below 50¢. Also, the power to levy bond taxes cannot be extended beyond 50¢. To illustrate: If the district has bonds outstanding that require a levy of 50¢, then it must levy that amount for bond purposes, and can levy only 50¢ for maintenance purposes. If it should transpire, as in the present case, that the district has bonds outstanding that a tax of 50¢ is not sufficient to service, still 50¢ is the legal limit of taxation for bond purposes, and that rate cannot be exceeded in any event. The above construction of the statutes under consideration is in accord with their plain language and provisions.

It appears from the record before us that at the several times the several bond issues above described were voted and issued, the assessed valuations of the district were sufficient for a 50¢ bond tax to service all of them. However, it appears that since such bonds were voted and issued the assessed valuations of the district have so declined that a 50¢ tax is insufficient to service all of them. Under such a record the holder of the 1921 bonds contends that it is entitled to a preference,— that is, that it is entitled to have all the proceeds of a 50¢ bond tax levy applied to such 1921 issue of bonds, before anything is paid on the 1926 and 1928 bonds. In this connection, the holder of the 1921 bonds seems to admit that the refunding bonds are ahead of its bonds. However, be that matter as it may, it becomes immaterial, as will later appear. The district contends that all of its outstanding bonds have an equal pro rata claim on the 50¢ bond fund. A determination of this issue is the question first certified.

∎ Before proceeding to decide the question just above mentioned, we deem it proper to say that, in our opinion, the decision thereof involves no issue as to the impairment of the obligations of a contract, under either our Federal or State Constitutions. This must be true, because the holders of the 1921, 1926, and 1928 bonds took them with the rights guaranteed and defined by the above statutes at the time of issuance. The bonds were issued under and by authority of such statutes. There-

fore, such statutes became a part of, and now govern the contracts. In deciding whether the 1921 bondholders have a preference over the 1926 and 1928 bondholders, we must determine: What was the nature of their contract in this regard with the district at the time it was made? If the 1921 bond contract contemplated that, in case of the subsequent insolvency of the district in a bond sense, the holders of the 1921 bonds would have a prior or preference right of payment out of the 50¢ bond fund over bonds subsequently issued, that right exists today, and has not been impaired by events transpiring since the contract was made. On the other hand, if the holders of the 1921 bonds took them under a contract that reserved in the district the power to issue subsequent bonds with an equal claim on the 50¢ bond fund in case of insolvency of the district in a bond sense, such 1921 bondholders have no preferential rights, and the holders of all valid outstanding bonds must share in the 50¢ bond tax ratably.

After a careful consideration of the statutes involved, in connection with the very able briefs and written arguments filed by counsel for the parties to the suit and numerous amici curiae, we have concluded that the holders of the several bond issues here involved stand on an equal footing.

A reading of Section 14 of the Act of 1921 discloses that it authorizes the issuance of bonds up to the amount that a 50¢ tax levy will service. It is true that the statute does not name the maximum amount in dollars, but it states the maximum by a mathematical formula which is just as definite. Under the terms of this statute districts are not restricted to a single bond issue, but they can vote and issue successive bond issues, so long as the statutory debt limit is not exceeded. In this connection, we find no words in the statute that to our minds indicate that a preference is intended as to successive bond issues. It is true that Section 19 of the 1921 Act, under which the 1921 bonds were issued, provides in substance that a tax shall be levied and collected annually of sufficient amount to service such bonds. But it must be held that this clause was intended to apply to all bonds as a class, and was not intended to apply so as to give preference to bonds in the order of their issuance. This must be true, because such statute clearly contemplates that as to all issues of bonds the district must provide for the levy and collection of a tax annually of sufficient amount to service them. In this connection, the statute applies with equal

force, and with absolute impartiality, to all bond issues, regardless of the order in which they transpire as to time.

We have read and carefully considered the numerous authorities cited by the briefs and arguments of the very able counsel above mentioned. In the interest of brevity we forego any attempt at an extended discussion thereof. It is sufficient to say that we regard the very wording of the pertinent statutes as decisive of this case. In this connection, however, we wish to say that, in our opinion, the rule of law announced by this Court in Voorhies v. Mayor of the City of Houston, 70 Texas, 331, 7 S. W., 679, is decisive of this case. In that opinion, which is by Judge Stayton, the following rule of law was announced as applying to insolvent tax funds: "If there be a fund to which more than one creditor is compelled to look as the only source from which their claims can be paid, and this be insufficient to pay all in full, then it is manifestly just, none of the claims having a preference, that the fund should be distributed pro rata." This same principle of equity was applied by this Court as to claims against the Bank Guaranty Fund formerly provided by our State banking laws after such fund became insolvent in the sence that it was insufficient to pay all who had claims thereon. This holding was announced in the face of the law that clearly gave the right of payment in the order in which bank failures occurred. Lacy v. State Banking Board, 118 Texas, 91, 11 S. W. (2d) 496. Finally, we think that the above statutes should not be construed so as to give a preference as regards holders of successive bond issues, because if the Legislature had intended such a construction, it would have said so, and not left the matter to conjecture, or even to construction. Powell v. City of Amarillo, 127 Texas, 294, 93 S. W. (2d) 144.

■ As already stated, under the statutes above quoted, the district has no power, in any event, to levy bond taxes for any year at a rate exceeding 50¢. Certainly this provision is a limitation of power. It follows that any attempt on the part of the district to levy a tax exceeding the statutory limit would not only be without authority of law, but, on the contrary, would be in direct contravention of law, and, at least to the extent the statutory limit is exceeded, void. Of course a court of equity would not attempt to compel a district to do that which it could not do of is own accord.

We are in accord wih the following holding of the Court of Civil Appeals in the case at bar:

"There is another phase of the judgment brought in question by a cross assignment of error, which, we think, is incorrect. The court ordered that out of delinquent taxes for the year 1933 and previous years, when collected, 50¢ out of each dollar should be paid into the sinking fund of the district to be paid out as otherwise directed in the judgment. The conclusions of fact show that there was no default in the payment of bonded indebtedness prior to the year 1932. Presumably up to that time the levy of taxes to pay the bonded indebtedness was sufficient. If so, the right of the district existed to levy all the remainder of the one dollar for maintenance purposes. We do not think that the court can now properly have the collections from delinquent taxes appropriated to the sinking fund, except in accordance with the former levies for the years in which the levies were sufficient. For the years 1932 and 1933, when it was found that 50¢ should have been levied, we see no reason why the court may not direct that out of delinquent taxes 50¢ of each one dollar shall be paid into the sinking fund. The judgment of the court below upon this point should be modified accordingly."

It is evident from what we have said that we answer the questions certified as follows:

Questions Nos. 1 and 2 are answered, "No."

Questions Nos. 3 and 4 are answered, "Yes."

Question No. 5 is propounded on condition, and is not answered because of our holding that the statute contemplates no priority.

Opinion delivered October 28, 1936.