**WOMEN'S CATHOLIC ORDER OF FOR-
ESTERS v. SPECIAL SCHOOL DIST. OF
NORTH LITTLE ROCK, PULASKI
COUNTY, ARK., et al.**

No. 11444.

Circuit Court of Appeals, Eighth Circuit.

July 27, 1939.

Rehearing Denied Sept. 5, 1939.

Thomas Mason, of Chicago, Ill. (Leo J. Hassenauer, of Chicago, Ill., and E. L. McHaney, Jr., of Little Rock, Ark., on the brief), for appellant.

Wallace Townsend, of Little Rock, Ark. (Thomas F. Digby, of North Little Rock, Ark., on the brief), for appellees.

Before GARDNER, and THOMAS, Circuit Judges, and WYMAN, District Judge.

GARDNER, Circuit Judge.

This was a suit in equity brought by appellant against the appellees, including the school district and all of its officers and directors, for the purpose of securing a judgment against the district for interest coupons past due and in default appurtenant to unmatured bonds issued by the district, and for a decree of specific performance requiring the district and its officers and directors to pay in full all of appellant's interest coupons unpaid and to pay in full all other of appellant's bonds and interest coupons as the same mature, or for a permanent injunction restraining the district, its officers and directors, and their successors, from diverting or using any revenues, funds or taxes belonging to the school district until the appellant shall have been paid in full.

It will be convenient to refer to the parties as they appeared below.

The defendants by their answer did not question the validity of the bonds, but denied the right of the plaintiff to any priority over other bondholders and alleged that plaintiff should be required to share ratably with the other bondholders in the funds available for the payment of bonded indebtedness.

On March 1, 1924, the defendant school district issued and sold its bonds amounting in the aggregate to $225,000. These bonds were issued for the purpose of building and equipping new school buildings. Plaintiff, on October 17, 1924, purchased $25,000 of these bonds. The defendant school district defaulted in the payment of interest on all plaintiff's bonds commencing with the interest coupons maturing on March 1, 1933, and all interest coupons thereafter maturing. The bonds were authorized by a resolution of the board of directors of the school district, which purported to pledge the "first revenues" of the district, derived from any and all sources, to the payment of said bonds and interest coupons. The resolution in form authorized the execution of a mortgage or deed of trust on the real estate of the school district. The mortgage or trust deed likewise pledged the "first revenues" of the district, derived from any and all sources, to the payment of the bonds and interest coupons.

Plaintiff's bonds mature in 1947, 1948 and 1949. The total annual collections of the district are not sufficient to pay the bonds and interest coupons as they mature, and continue operation of the schools, under the present levy voted by the district. The total outstanding bonds of the district is $1,045,500. Plaintiff's bonds are part of a senior issue. The electors of the district have voted a levy of seven mills for building purposes, but, as observed, this is insufficient to pay interest and principal according to the terms of the bonds of plaintiff, unless they be given priority.

The trial court found that the bonds were duly issued, but that at the time the district did not have authority to vote for a continuing millage tax for a building fund, and that there was no certain millage or other revenue that could be pledged for the bonds, but that their payment depended upon taxes being voted from year to year by the electors of the district. A judgment for the amount due was entered, but no other relief was granted, except to

give plaintiff its pro rata share of money set aside to pay bonded indebtedness.

On this appeal plaintiff contends that there was a valid pledge of revenues of the district, with the right of priority of payment; and that the laws and decisions of the Supreme Court of Arkansas at the time of the issuance of plaintiff's bonds had established the right of the directors of a city special school district to create a building fund from the first revenues of the district and pledge that fund to the payment of such bonds, which laws and decisions became a part of the contract between it and the plaintiff which could not thereafter be impaired either by legislative enactment or judicial decision. Plaintiff relies largely upon the decisions of the Supreme Court of Arkansas in Schmutz v. Special School District, 78 Ark. 118, 95 S.W. 438, and American Exchange Trust Co. v. Trumann Special School District, 183 Ark. 1041, 40 S.W.2d 770.

By Act of the Legislature of Arkansas approved February 7, 1913, it was provided among other things as follows: "All special school districts in the State of Arkansas are hereby authorized and empowered, for the purpose of raising funds for the erection and equipment of necessary school buildings, to borrow money and mortgage the real property of the district as security therefor, under such conditions and regulations as to amount, time and manner of payment as the board of directors of said school district shall prescribe, and renew and extend from time to time any evidence of indebtedness or mortgage, or both, issued or made by virtue thereof, and to refund such indebtedness and execute new evidences of indebtedness and mortgages therefor." C. & M.Digest, 1921, § 8977.

The Act of May 6, 1905, as amended by Act of March 1, 1917, contained provision that: "The said evidences of indebtedness, whether warrants or promissory notes, or both, and mortgages, shall be in form in all respects as other investments of like kind are required by law to be, and shall have the same force and effect as they would if executed by natural persons, and the warrants shall have the same validity as they would if there were money in the county treasury to pay the same at the time they were drawn and may be drawn payable in the future, and need not be registered with the county treasury until the time for payment, but shall be drawn upon the building fund and paid out of it in the order of their date, as the building fund is provided and collected by the successive levy and collection, and said special school district shall be allowed in law or equity no defense merely by reason of the fact that it is a school district. * *" C. & M.Dig. 1921, § 8978.

By Act approved March 6, 1917, it was provided that: "The board of directors of any special, rural special or consolidated school district in the State of Arkansas shall have the power and they are hereby authorized to borrow money for the purpose of purchasing a school site or sites and building, erecting, constructing, repairing and equipping a school building or buildings and for other necessary purposes and for carrying into effect the purposes of this Act, and to that end any board of directors may issue bonds in any denominations that said board may designate, payable in lawful money of the United States of America; and said bonds shall be coupons bonds, bearing interest at a rate not exceeding six per cent per annum, interest payable annually or otherwise at a time agreed upon by the board. * *" Acts Ark.1917, p. 983, § 1.

In 1931, the Legislature adopted Act No. 169, p. 476. By Section 66 of this Act (page 518) it attempted to define building fund.

In Schmutz v. Special School District, supra, strongly relied upon by plaintiff, the court among other things said [78 Ark. 118, 95 S.W. 439]: "Lastly, it is contended that the recitals in the bond pledge the revenues of the district for their payment. The act under which the bonds were issued provides that the evidences of indebtedness issued by the district shall be 'paid out of the building fund in the order of their date as the building fund is provided and collected by successive levies.' This in effect pledges the building fund of the district whatever that may be to the payment of the bonds. Besides, as the bonds are valid obligations, it was evidently the intention of the Legislature that they should be paid out of the revenues of the district, and they are therefore a charge against such revenues *as any other valid debt would be.* But if we concede that the directors had no authority to pledge the revenues of the district in that way, this would not justify us in enjoining the issuance of the bonds, for if the directors exceeded their powers in that respect this

provision of the bond would not estop the district or bind the successors in office of the directors who issued the bonds. For the question of whether the district has power to pledge its revenues was not committed to those directors for ascertainment and decision. Their decision on that matter is no more binding than their opinion on any other question of law affecting these bonds." (Italics supplied.)

In the Schmutz case, the court was considering Act No. 55 of 1905, p. 154. That Act contains substantially the same language as the Act of May 6, 1905, by authority of which the bonds in controversy were issued.

In American Exchange Trust Co. v. Trumann Special School District, supra, also relied upon by plaintiff, the court said [183 Ark. 1041, 40 S.W.2d 771]:

"There is no doubt but that the board of directors could provide a building fund for the payment of bond issues for money borrowed by the district, but the statute does not require that it shall be done, except when warrants payable in future are issued as evidences of indebtedness for the money borrowed. This court held in construing a special act authorizing the borrowing of money by a special school district, which provided that the evidences of indebtedness issued by the district shall be 'paid out of it in the order of their date, as the building fund is provided and collected by the successive levy' that it pledged in effect 'the building fund' of the district, the bonds containing such recitals, to the payment thereof, but held also that the bonds were valid obligations of the district, and it was evidently the intention of the Legislature that they should be paid out of the revenues of the district 'and are therefore a charge against such revenues.'

"The board of directors could not have limited the liability of the district to the payment of the bonds out of the revenues set aside for 'the building fund,' if one had been provided, since they were and are a charge against the whole revenues of the district. Schmutz v. Special School District of Little Rock, 78 Ark. 118, 95 S.W. 438."

Section 3 of Article 14 of the Arkansas Constitution of 1874, provided that the General Assembly might by general law authorize districts to levy by a vote of the qualified electors of the district a tax not to exceed five mills on the dollar in any one year for school purposes, and that it might by general law provide for support of the common schools by taxes which should not exceed in any one year two mills on the dollar. In 1907 and 1917, the maximum rate that might be voted was increased to seven and fourteen mills respectively. The Act of February 7, 1913, defined the power of the district to raise money for building purposes. It is noticeable that by none of these Acts, constitutional or statutory, was any power conferred to pledge revenues. It is also observed that the constitutional provision is that the tax shall be voted in each year. So far as the law in force when these bonds were issued is concerned, it seems extremely doubtful whether the school district could do more than make an annual appropriation for building purposes through action of its electors.

The language of these two cases lends some plausibility to the position taken by the plaintiff. But the question is one inherently "local in origin and content." In the Schmutz case the court did not hold that the directors had power to pledge the revenues of the district, but rather that the statute in effect pledged the building fund, and the court seemed to be in doubt as to what the building fund might be. These bonds issued in 1924, at a time when there was no specific authority in the directors of the school district to vote a building fund, but nevertheless, the directors assumed the authority to create such a fund. It is noticeable too that the decision in the Schmutz case points out that the bonds there involved should be paid out of the building fund as provided and collected by successive levies. But we think it significant that in the Schmutz case the court should have pointed out that even if the directors had no authority to pledge the revenues, the issuance of the bonds should not be enjoined "for if the directors exceeded their powers in that respect this provision of the bond would not estop the district or bind the successors in office of the directors who issued the bonds. For the question of whether the district has power to pledge its revenues was not committed to those directors for ascertainment and decision."

In American Exchange Trust Co. v. Trumann Special School District, supra, the bondholders contended that the agreement of the district to set up a building fund out of the first revenues was enforceable and if enforced a definite fund for the payment of the bonds and interest

720

would be available. The court, however, refused to require the school district to set up such a fund. It said that the bonds were a charge against the whole revenues of the district but the district should not be compelled to set aside revenues into a building fund for the payment of unmatured bonds. This in effect left the bondholders in the position of common creditors of the district. In fact, in the Schmutz case, the court in referring to the bonded indebtedness being a charge against the revenues of the district, apparently spoke in the most general terms because it reached its conclusion simply because they were valid obligations and they were "a charge against such revenues *as any other valid debt would be.*"

The best answer as to the effect and construction of these decisions of the Supreme Court of Arkansas is to be found in the later opinions of that court. The same arguments now urged upon us with reference to these decisions were presented to the Supreme Court of Arkansas in Horne v. Paragould Special School District, 186 Ark. 1000, 57 S.W.2d 568, 570. In that case, as here, bondholders were asserting rights to school revenues under a building fund provision and pledge. A six mill tax had been voted for building or bond payment fund, which was insufficient to pay the interest on the outstanding bonds. The Supreme Court of Arkansas reviewed its former decisions and held that the bondholders were limited to the six mill levy voted for building fund. Referring to its prior decisions, the court said: "Appellant contends that section 8977, Crawford & Moses' Dig., and the decisions of this court in Schmutz v. Special School District of Little Rock, 78 Ark. [118], 119, 95 S.W. 438, and American Exchange Trust Co. v. Trumann Special School Dist., 183 Ark. 1041, 40 S.W.(2d) 770, 771, support his contention that all the revenue may be pledged. Said section provides: 'To borrow money and mortgage the real property of the district as security therefor, under such conditions and regulations as to amount, time and manner of payment as the board of directors of said school district shall prescribe. * * *' This section authorizes the directors to mortgage the real property of the district to secure the money borrowed, and permits them to fix the time and manner of payment. It does not authorize them in specific terms to pledge any revenue, and it could not authorize them to pledge any part of the

18-mill tax voted for any other purpose. Neither the Schmutz nor the Trumann Special School Dist. Case, supra, discussed the exact question now under consideration. In the latter case, after quoting from the former, it is said: 'The board of directors could not have limited the liability of the district to the payment of the bonds out of the revenues set aside for "the building fund," if one had been provided, since they were and are a charge against the whole revenues of the district.' What the court meant by a 'charge against the whole revenues of the district' was the whole of its certain revenue, or revenue from fixed sources, such as the 3-mill state tax, poll tax, tobacco tax, severance tax, such bond fund tax as might be, if and when voted, but not that part of the optional tax voted for school purposes. We think these and other cases cited by appellant are not in point, for the reason they do not have the same background of fact."

In Horne v. Paragould Special School District, supra, and in the later case of Pledger v. Cutrell, 189 Ark. 562, 74 S.W. 2d 646, 648, 75 S.W.2d 76, the court referred to Amendment No. 11 to the Constitution of Arkansas. This amendment was adopted October 5, 1926, and hence, was subsequent to the issuance and sale of the bonds here in question. It provides that: "The General Assembly shall provide by the general laws for the support of common schools by taxes, which shall never exceed in any one year three mills on the dollar on the taxable property in the State, and by an annual per capita tax of one dollar, to be assessed on every male inhabitant of this State over the age of twenty-one years. Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed eighteen mills on the dollar in any one year for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings. Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

In the Pledger case, the court considered the subject of the division of school revenues between maintenance and operation of schools and the retirement of existing debts. It points out that under the

Eleventh Amendment to the Arkansas Constitution, no tax may be levied save by an affirmative vote of the qualified electors of the school district and that such levy is limited to eighteen mills on the dollar for any one year. The court, among other things, said: "Therefore it definitely appears that the levy of any tax under this amendment is exclusively optional with the qualified electors in the school district affected." The court, quoting from Horne v. Paragould Special School District, supra, further said: "'The electors of any school district may vote a tax at any rate they wish for any or all said purposes, provided the tax voted for all does not exceed 18 mills. For instance, they might vote 6 mills for bond and 12 mills for school purposes, as they did in this case, and, when so levied and collected, neither sum could "be appropriated for any other purpose * * * than that for which it is levied." * * * No other construction can be given, and any other in the present case would probably work disaster to both parties. For, since the voting of any tax for any purpose is optional with the district's electors, the taking of the 12 mills voted for general school purposes to pay bonds would close the schools and keep them closed for many years, it would seem reasonably certain the electors would not vote a tax on themselves and have no schools. The bondholders would lose the 6-mill tax now being received, a substantial loss to them, and the district would be without a free public school for years to come, which would be disastrous to it and its people.'" The court concludes that: "It follows from what we have said that creditors nor any one else can acquire a vested right or interest in or to any levy of taxes under Amendment No. 11 or to any part thereof until same has been voted by the qualified electors each year."

The instant case involves a construction of the statutes of Arkansas as applied to Arkansas contracts. The jurisdiction of the federal court was invoked on the ground of diversity of citizenship, and there was no allegation or claim that either of the legislative acts involved nor the Constitution of Arkansas impaired the obligation of the contract, in violation of the restraints of the Federal Constitution. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610; Great Northern R. Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, 85 A.L.R. 254. In such circumstances, "The parties and the federal courts must now search for and apply the entire body of substantive law governing an identical action in the state courts." Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 862, 82 L.Ed. 1290. See, also, Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Plaintiff in this suit sought specific performance, and it was, of course, incumbent upon it to prove that the defendant district, or its officers, were receiving money which legally could and should be paid to plaintiff, and was being withheld. This, we think, it has failed to do.

Plaintiff calls to our attention certain provisions of the Act of May 6, 1905, reciting that the "school district shall be allowed in law or equity no defense merely by reason of the fact that it is a school district." Manifestly, this provision was not intended to and could not destroy or disregard the inherent nature of a school district and its dependence upon revenues from taxes for the purpose of maintaining its schools and paying its debts. Section 3 of this Act, as amended, provides that in any action by or against such districts arising on any instrument or contract made under the Act, "the district shall, so far as practicable, be deemed and treated as natural persons." Acts Ark.1905, p. 652, § 3. But even an individual can pay no more of his obligations than his income or property will permit, and if an individual should contract to pay out of his annual income a certain amount to a creditor for a period of years and until an obligation should be extinguished, and the income of the individual should then diminish to such a point that it became less each year than the amount promised to be paid out of it, such fact would be a defense that might be interposed by an individual to an action against him for specific performance.

In its complaint, plaintiff asked for a decree giving its bonds priority in right of payment out of the funds set apart for payment of bond interest. It appears from the record that the defendant district's bonds were issued under practically the same statute which did not purport to limit the authority of the school district to one issue or to any definite amount of bonds. Neither did the statute make any provision for priority or preferences in favor of any bonds issued thereunder. Manifestly, the statute contemplated that the district might

from time to time issue bonds, all payable from the same revenues without priority or preferences. Hoehler v. W. B. Worthen Co., 154 Ark. 444, 243 S.W. 822; Bankers Life Co. v. Breckenridge Independent School Dist., 128 Tex. 203, 97 S.W.2d 933, 108 A.L.R. 1010; Howe v. Long Prairie Levee Dist., 187 Ark. 725, 62 S.W.2d 10; McNear v. Little Red River Levee Dist., 8 Cir., 293 F. 717; Rowekamp v. Mercantile-Commerce Bank & Trust Co., 8 Cir., 72 F.2d 852; Luehrmann v. Drainage Dist. No. 7, 8 Cir., 104 F.2d 696 opinion filed June 13, 1939. On this phase of the case, we conclude that the plaintiff was entitled to receive only its proportionate share of such revenues of the district as were available for payment on the district's bonded indebtedness.

It is finally urged that the decree is erroneous in form as to the interest allowed. The matter of interest on judgments entered in a federal court is controlled by the law of the state in which the federal court is sitting. 28 U.S.C.A. § 811; Union National Bank v. Louisville, N. A. & C. R. Co., 163 U.S. 325, 16 S.Ct. 1039, 41 L.Ed. 177. Section 9400 of the Digest of the Statutes of Arkansas for 1937 provides that judgments or decrees upon contracts bearing more than six per cent interest shall bear the same interest as may be specified in said contracts, and the rate of interest shall be expressed in such judgment, and all other judgments and decrees shall bear interest at the rate of six per cent per annum until satisfied. This suit was brought upon the interest coupons alone. No interest was provided in the coupons themselves, but the deed of trust provided that if any bonds or interest coupons were not paid at maturity, any sum due thereon should bear interest at the rate of six per cent per annum until paid. Interest due at the time of the rendition of a judgment becomes a part of the judgment, and the judgment should include the principal and also interest thereon to the date of the rendition of the judgment. Morris v. Carr, 77 Ark. 228, 91 S.W. 187; Soudan Planting Co. v. Stevenson, 100 Ark. 384, 140 S.W. 271. The decree here challenged provided that, "The plaintiff do have and recover of and from the defendant school district the sum of $6,875 as matured and past due interest on its bonds, and that this interest shall bear interest from the date of the respective maturities of the coupons until paid at the rate of six per centum per annum." The decree should have provided for the payment of the full amount of coupons, together with interest thereon from their respective dates of maturity at the rate of six per cent to the date of the decree, and the decree should then bear interest at the rate provided by statute.

The decree appealed from gave plaintiff all it was entitled to under the law of Arkansas, its pro rata share of the money set aside for payment of bonded indebtedness; but the court erred in the form of decree with reference to interest as herein pointed out. In this respect the decree is modified and as so modified it is affirmed. As the modification goes to a matter of form rather than substance, the appellees are entitled to recover their costs on this appeal.