## MORTON et al. v. DARDANELLE SPECIAL SCHOOL DIST. NO. 15 OF YELL COUNTY, ARK., et al.

### No. 11793.

Circuit Court of Appeals, Eighth Circuit.

June 30, 1941.

James B. McDonough, of Fort Smith, Ark., and S. L. White, of Little Rock, Ark. (House, Moses & Holmes, of Little Rock, Ark., on the brief), for appellants.

Wallace Townsend and Lee Cazort, Jr., both of Little Rock, Ark., for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question for decision is whether, under the law of Arkansas, a pledge of the

general tax revenues of an urban special school district, made by the school board in some bonds and a deed of trust issued in 1926 for building purposes, is valid and enforcible. The trial court held that the pledge was void, and the trustee for the bondholders has appealed.[1]

We agree with the decision of the trial court. We have previously expressed ourselves upon the general proposition involved, in Women's Catholic Order of Foresters v. Special School District of North Little Rock, 8 Cir., 105 F.2d 716. The statute now before us (Act 248 of 1905, as amended by Act 160 of 1917, Crawford & Moses Dig.Ark. §§ 8977, 8978, 9010) is practically identical with the one involved in that case. We there held that, under the decisions of the Supreme Court of Arkansas, in Schmutz v. Special School District of Little Rock, 1906, 78 Ark. 118, 95 S.W. 438; American Exchange Trust Co. v. Truman Special School District, 1931, 183 Ark. 1041, 40 S.W.2d 770; Horne v. Paragould Special School District, 1933, 186 Ark. 1000, 57 S.W.2d 568, and Pledger v. Cutrell, 1934, 189 Ark. 562, 74 S.W.2d 646, 75 S.W.2d 76, the authority of the board of directors of an urban special school district, under the statutes involved, to issue bonds on behalf of the district without a vote of its electors, did not include the power to pledge the general tax revenues of the district, and that an attempt by the board to create a lien upon any part of such revenues was void. Except as to the lien existing under the deed of trust upon the school building itself, the bondholders in this case are therefore, as declared in our previous decision (page 720 of 105 F.2d), "in effect left * * * in the position of common creditors of the district."

The Women's Catholic Order of Foresters case disposes of all the contentions here, except the claimed violation of the contract clause (Const. Art. 1, § 10) and the due process clause (14th Amend. It is argued that Schmutz v. Special School District of Little Rock, supra, in effect recognized the right of the school board of an urban special school district to pledge the tax revenues of the district, and that the subsequent decisions of the Supreme Court of Arkansas, made since these bonds were issued, have changed the rule of the Schmutz case, to the bondholders' prejudice. With this construction, we do not agree. We think, as indicated in the Women's Catholic Order of Foresters case (page 720 of 105 F.2d), that the later decisions have attempted rather to clarify the ambiguities of the Schmutz opinion, than to change its rule. But, even if the court had changed its previous statutory construction, this would not have constituted a violation of the contract and due process clauses of the Federal Constitution. The prohibition against impairing the obligation of contracts has no application to mere changes in judicial decisions. People's Banking Co. v. Sterling, 300 U.S. 175, 57 S.Ct. 386, 81 L. Ed. 586; Tidal Oil Co. v. Flanagan, 263 U.S. 444, 44 S.Ct. 197, 68 L.Ed. 382; 12 Am.Jur. 26, § 398.

It is further contended that the contract obligation of the 1926 bonds was impaired by the subsequent adoption of

---

[1] Two bond issues actually are involved—one dated March 1, 1926, in the amount of $55,000, and the other dated January 1, 1931, in the amount of $105,000. The trustee under the 1926 issue brought suit in federal court, on diversity of citizenship, to obtain a judgment for the amount of the bonds; to foreclose the deed of trust on the school building, securing them; and to impound all the revenues of the district, as having been pledged in the bonds and deed of trust. The trustee under the 1931 issue intervened, seeking similar relief. The court entered judgments against the school district for the full amount of the bonds, and reserved jurisdiction to enter such further orders "as may be necessary to enforce the rights of the parties hereto, and to direct a sale of the real property of said district should it become necessary to sell the same." After giving the district an opportunity to attempt to effect a refinancing, the successor-trustee under the 1926 bonds made application to the court for an order requiring all the tax revenues of the district to be applied to the payment of the judgment on the bonds. A similar application was filed by the trustee under the 1931 bonds. Each alleged that a refusal to enforce the pledge of the district's tax revenues contained in the bonds would impair the obligation of the bondholders' contract, in violation of Art. 1, § 10 of the Constitution, and would deprive them of property without due process, in violation of § 1 of the 14th Amendment.

Both trustees have appealed. The view we take of the rights under the 1926 bonds is determinative also of the appeal as to the 1931 bonds, and there is no need for separate discussion.

Amendment No. 11 to the Constitution of Arkansas. Art. 14, § 3, of the Constitution of 1874, as amended in 1917, which was in effect at the time the bonds were issued, contained the following provision: "Provided, the General Assembly may by general law authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed twelve mills on the dollar in any one year *for school purposes.* Provided, further, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it was levied." (Italics added). Amendment No. 11, adopted in 1926, after the issuance of the bonds, changed the first proviso in Art. 14, § 3, supra, to read as follows: "Provided, that the General Assembly may, by general law, authorize school districts to levy by a vote of the qualified electors of such districts a tax not to exceed eighteen mills on the dollar in any one year *for the maintenance of schools, the erection and equipment of school buildings and the retirement of existing indebtedness for buildings."* (Italics added). The proviso that no tax could be appropriated to any other purpose than that for which it was levied remained unchanged.

Adapting the argument to the views which we have expressed above, its purport is that Amendment No. 11 restricted the power and ability of the board of directors to make payment of the bonds; that, prior to the adoption of the Amendment, the electors simply voted a tax levy "for school purposes" generally, and left the board free to use the funds in such manner as it saw fit; that the board thus had the power to apply any part of the tax revenues of the district to the payment of the bonds involved, if it chose to do so; that under the Amendment the electors were required to vote a specific levy for the retirement of the building indebtedness of the district before any tax funds would be available to the bondholders; that the electors could refuse to make any levy for this purpose, as they had done; and that the Amendment accordingly deprived the bondholders of the benefit of such payments as the board of directors, except for the Amendment, might have been willing to make to the bondholders out of the general tax revenues of the district.

We have held above that, under the law of Arkansas, the bondholders never had a lien on the general tax revenues of the district, and so they could not have compelled the board of directors to make application of any part of such revenues to the payment of their bonds, as a matter of contract obligation. That which was not an enforcible contract right was not an obligation which could be impaired, within the meaning of the constitutional prohibition. Compare United States ex rel. Siegel v. Thoman, 156 U.S. 353, 15 S.Ct. 378, 39 L. Ed. 450 and Sinclair v. Brightman, 198 Mass. 248, 84 N.E. 453. The electors of the district were as free to vote funds for bond payments as they had always been, if they could be induced to do so. If they failed or refused, the bondholders were entitled to enforce the lien given them upon the real property of the district under the provisions of their mortgage.

Lest it appear that the position of the district was one of utter repudiation, it should perhaps be said that it was the contention of the district that real estate values had so decreased in the district that its total authorized tax levy was needed to pay the actual operating expenses of its schools, and that the trial court found from the evidence that such was the fact. It may be added also that the district consented to an order that the funds received by it from state appropriation, except sales tax revenue, were entitled to be applied to the payment of the bonds. It was agreed that the amount of these funds was equivalent to a six mill levy by the district, which, however, was not sufficient to pay the accruing interest upon the bonds. But with these matters we have no direct concern here.

What we have said disposes also of the appeal taken by the trustee under some bonds issued in 1931, who had intervened in the suit and sought similar relief against the district.

Affirmed.