## RITTENOURE et al. v. CITY OF EDINBURG et al.

### No. 11488.

Circuit Court of Appeals, Fifth Circuit.

Feb. 12, 1947.

P. G. Greenwood, of Harlingen, Tex., for appellants.

Millard Parkhurst, of Dallas, Tex., V. W. Taylor, of Brownsville, Tex., and L. Hamilton Lowe and Ralph T. Rawlins, both of Edinburg, Tex., for appellees.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

The appellants, complainants in the court below, being holders of unrefunded bonds, coupons, and warrants of the City of Edinburg, Texas, issued prior to 1933, sued on some of them, and on a judgment rendered in 1937 and 1938 on others, praying judgment against the City on those not already in judgment, a mandamus against the City officers for their payment from the sinking fund on hand created for the payment of the funded debt of the City, and for the levy of additional taxes if necessary. There was a prayer for other proper relief both at law and in equity.

The City by answer set out a list of persons adversely interested in the sinking fund and asserted they were necessary parties; it pleaded as res judicata the decree made in a former cause of Medlicott et al. v. City of Edinburg on April 15, 1933, asserting that it bound complainants here as one in a class suit, though complainants were not personally served; it pleaded that case, also, as one still pending, which complainants should enter for relief under said decree; and it denied some of the facts stated in the complaint, especially the allegation that the City is solvent and able to pay its maturing debts. The City specially pleaded that the sinking fund on hand was raised under the decree of April 15, 1933, to be disbursed only, as therein provided, to persons intervening in that case under the decree; and in the alternative, if complainants are entitled to participate otherwise, they are limited to the proportion that the principal of their debts bears to the principal of the debts owed at the time the complainants' debts originated, to avoid preferring them over other creditors whose debts have been affected since by the decree of April 15, 1933, and by a municipal debt composition in 1941 under the Bankruptcy Act, 11 U.S.C.A. § 1 et seq. Limitation as a bar to some of the debts was also pleaded. Complainants in reply to this answer denied they were bound by the decree of April 15, 1933, because not parties and because it was a consent decree; nor by the bankruptcy proceeding because they were discharged from it as having debts not to be affected by the composition. They asserted that if there was to be any prorating of the sinking fund it ought to be on the basis of the matured obligations now held by each.

An intervention was allowed by James Davis, he having a supplemental judgment on original bonds under the decree of April 15, 1933; and another by eight holders of bonds refunded under the composition decree, who proposed to represent as a class holders of all bonds issued or to be issued under either decree. This latter intervention adopted the defenses of the City, prayed that complainants be denied any part in the sinking fund raised under the decrees, that in future tax levies they be restricted to shares based on the proportion of their indebtedness to the whole indebtedness at the time of the April 15, 1933, decree; and that these intervenors' expenses and attorneys' fees be paid from the sinking fund and from payments made to the members of their class.

There was a stipulation of pertinent facts and a trial before the judge. Judgment was given the complainants on all their debts which were not already in judgment and not barred by limitation. It was held that complainants could share in the sinking fund only to the extent and in the manner provided in the decree of April 15, 1933; and attorneys' fees and expenses were fixed for the class intervenors against the sinking fund protected by them. Findings of fact and conclusions of law were made to the general effect that the City was unable to pay the matured debts of complainants and others and the accruing interest on the refunded bonds, and to provide the necessary sinking fund to pay them at their maturity; that the decree of April 15, 1933, was in a class suit and was equitable and provides

still for a refunding under it of the bonds of complainants and other holders of unrefunded bonds, and that they can participate in the sinking fund only by coming in as refunders under the decree. The class intervention was found to be properly such, and the expenses and attorneys' fees claimed were found to be reasonable. The complainants and James Davis, each being holders of claims on unrefunded bonds, appeal.

1. As to the amount of the judgment given the complainants, it is conceded that on the findings and stipulated facts the judgment should be for $6,730 of principal instead of $3,430; and it should be corrected accordingly.

2. As to the effect on the statute of limitations of the pendency of the bankruptcy proceedings from September 8, 1940, to December 13, 1941, the judge correctly held there was no suspension. Cited for the contrary view is § 11, sub. f, of the general Bankruptcy Act as amended by 52 Stat. 849, 11 U.S.C.A. § 29, sub. f, providing for a suspension during ordinary bankruptcy. But by 11 U.S.C.A. § 22 a municipal corporation is excluded from the general bankruptcy law, even as a voluntary bankrupt. The proceeding here involved was under Chapter 9, which is a special extension of the Bankruptcy Act to local taxing districts whereby they may seek a composition of their debts; 11 U.S.C.A. § 401 et seq. Such a proceeding, while within the bankruptcy powers of the United States, is not a true bankruptcy in that the property of the debtor is not surrendered to the court nor are its debts discharged. There is nothing to prevent creditors suing on their claims in the ordinary manner unless the bankruptcy court shall enjoin such suits, as it may do under Sec. 403, sub. c. No injunction was issued here. Complainants, refusing the composition proposed, were discharged by the Court as not to be affected by the amended plan of composition. They might at any time have sued.*

3. The decree of April 15, 1933, was rendered in an equity suit before there was any remedy afforded a municipality in bankruptcy. The suit was brought in the federal court against the City and its Mayor and Secretary by holders of bonds, warrants, and coupons, a part of about $2,500,000 of such obligations then outstanding, and asserted that the other owners of such obligations were numerous and scattered, but their interests were identical in the proposed issues, and that all were a class properly to be represented by the petitioners. The equity of it was that the City had only about 5,000 inhabitants and its assessable property was less than the debts; that the City could not tax it in the aggregate more than $2\frac{1}{2}$ percent per year, though the State Constitution required a sinking fund to be created by putting 2 percent of the indebtedness each year into it to be used in retiring the indebtedness at maturity; but the interest rate was 5 percent and 6 percent, and the City had to operate besides, so that it was impossible for the City to do as required and it had not done so, and there was a great accumulation of matured but unpaid indebtedness, and a necessity to make an equitable adjustment of the City's resources. The Court treated the case much as though it were a creditor's bill without a receiver, and cited by publication all persons having claims to file their claims within a month or be barred. A great many persons filed them and within another month a final decree was entered, apparently without taking any testimony, and on the written consent of the petitioners and the defendants named in the petition.

There was in existence in 1933 a sinking fund of about $100,000 to the distribution of which some of the prayers of the petition related. It constituted a res in the control of the court as to which such procedure might be applied. It was distributed and is gone now. There may be doubt whether the future taxing power of the City for many years to come was such a res, for it is only a general obligation or duty till realized by collection of taxes, and is neither real nor personal property in the

---

* Poinsett Lumber & Manufacturing Co. v. Drainage Dist. No. 7, 8 Cir., 119 F.2d 270, is not to the contrary. In that case the court had enjoined all creditors from suing in other courts, and an application for leave so to sue was denied, and the denial of leave was the subject of the appeal. The broad language of the opinion must be read as applying to the issue before the court.

hands of the court. See First National Bank of Rome v. First National Bank of Jasper, 5 Cir., 264 F. 83, affirmed 258 U. S. 112, 42 S.Ct. 202, 66 L.Ed. 490. But we need not pursue this question of jurisdiction to bind creditors who did not appear, because for other reasons the decree rendered ought not to bind these appellants, although Davis and Crum seem to have been before the court as filers of claims. No appellant ever agreed to what was done by the decree, or accepted benefits under it. If there is any estoppel it is because the decree is an adjudication and binds them because they were represented as members of a class by the then petitioners. While the petitioners, who were a bondholders committee representing a majority of the bonds, offered themselves as suing for all, they were not designated by the court as class representatives, nor does the decree treat them as such. The decree shows on its face that no evidence was taken or trial of issues had before the court, but that three days before the date of the decree the petitioners made an agreement with the City in pursuance of which the City passed an elaborate ordinance to provide a refunding of the indebtedness which it recognized as valid by issuing refunding bonds to mature twenty years later at a greatly reduced rate of interest, and a principal of $436 for each $1,000 of old indebtedness. The full taxing power of the City being $2.50 on the $100 per year was apportioned $1 for operating the City, and $1.50 to pay accruing interest and to create a 2% per annum sinking fund for the refunding bonds only. The effect of the plan was to take all available taxes for the refunding bonds and leave nothing for bondholders who might decline to refund. This agreement and ordinance were presented to the court, with a decree approving them and making elaborate provisions to carry them out, and a written consent to the decree signed by counsel for the petitioning bond committeemen, the City, and the City depository which had the then sinking fund, which was also disposed of by the decree. The decree recites that it is made on this consent, and that it is not to affect claims not adjudicated by it to be valid, and retains jurisdiction to adjudicate such as might thereafter be presented and admit them to participate in the refunding.

The effect of it all was to put the indebtedness really represented by the then petitioners in a class of refunders, and to put others in another class who had the option to refund or not as they might elect, but under conditions designed to force them to refund. The petitioners could no longer fairly represent the latter class, so as to bind them by the litigation. 30 Am.Jur., Judgments, § 228; Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A. L.R. 741.

Thus there was no real litigation resulting in the decree. It has the force of a judgment, though by consent, as between the consenting parties; but not as to non-consentors. The principles of class representation whereby absent persons may be bound by judgments contemplate a real presentation of the issues to the court by parties whose interests are identical with those of the absent persons, and a decision of them by the court. Here there were only agreements and consents, a compromise indeed, made without authority from these appellants, which they could ratify or repudiate at their option.

And we doubt that the decree purports to bind any but those who consented. There are broad reservations of the defenses of the City as to others, and of the right of others to present their claims thereafter for adjudication and participation in the plan.

For all these reasons we are of opinion that the decree is not binding as res judicata on appellants, and that they are free to ignore it. It follows, too, that the proceeding of 1933, if it be still pending, is not one in which appellants will have to intervene, to set it aside or to claim under it. They may disregard it as not being parties to it or affected by it.

Since appellants would not accept the new bonds under this decree, nor under the composition in bankruptcy from which they were expressly excluded, they retain their original rights. While the decree of April 15, 1933, appears equitable and has operated to their advantage in improving the financial condition of the City, it does not bind them. Davis later obtained in that case

only a law judgment to which he was in any event entitled. Since the present complainants were not parties by any valid representation or service of process, we find nothing to prevent any appellant from asserting his original rights, and it was error to give effect against them to the decree as respects the City's future taxation.

4. The sinking fund now on hand, while raised by an annual property tax of $1.50 per hundred as provided by the decree, is not a fund in court in that case, nor does it belong solely to the creditors who have accepted the court's plan of equitable composition. The State Constitution, Art. 11, § 6, Vernon's Ann.St., required that when the City made these debts it should levy annual taxes to service them, including the setting apart of a sinking fund of 2 percent of the principal to retire them. The taxes so levied and the sinking fund so raised belong in equity to the creditors, though the legal title is in the City. It is the creditors' security for their debts, a part of their contract which may not be impaired. See City of Austin v. Cahill, 99 Tex. 172, 88 S.W. 542. The City tax ordinances each year since 1933 made no reference to the decree of April 15, 1933, or to the decree of composition in 1941 in levying these taxes, nor did they levy them solely for the refunded bonds, but each ordinance reads, "for the purpose of creating an Interest and Sinking Fund with which to pay the interest and retire the principal of all valid bonded and warrant indebtedness of the City of Edinburg * * *." The debts of appellants are included and cannot be excluded by force of the decree of April 15, 1933. Though perhaps appellants might have been forced into the bankruptcy composition proceeding in 1940 by treating the plan of composition of 1933 as an uncompleted plan, this was not done. The plan was amended to exclude appellants' debts as not to be affected by it, and they were discharged from the case.

5. But because the City is found still unable to meet its obligations as they have matured and will mature, which is insolvency in the equitable sense, an equitable apportionment of the available tax revenue, which is the common security for all, is still necessary. Voorhies v. City of

Houston, 70 Tex. 331, 7 S.W. 679, 683; City of Austin v. Cahill, 99 Tex. 172, 88 S.W. 542; Bankers Life Co. v. Breckenridge Independent School Dist., 128 Tex. 203, 97 S.W.2d 933, 108 A.L.R. 1010; Groner v. United States, 8 Cir., 73 F.2d 126. This court may make the apportionment for appellants who are not bound by the previous decrees. Creditors having an opposing interest are represented by the City whose interest is identical with theirs, and more especially by the intervening appellees who have in this case been recognized and designated by the court as representatives of that class.

A strong point is made that the refunding bonds of 1933, and the ordinance authorizing those of 1940, after referring to the voluntary decrease of principal of each original bond from $1,000 to $436, provide expressly that the takers of the refunding bonds shall be subrogated to the rights, remedies, and privileges the holders of the original bonds had. This conventional subrogation seems to us to have a highly equitable application to the present problem. The bondholders who exchanged original bonds or warrants for the refunding bonds cannot have more as interest than they have agreed to accept, nor more principal, nor an earlier maturity, but during the continuance of the City's insolvency they ought to have as much of the interest fund for their interest claim as they would have had on their unrefunded claim, not exceeding that owing under the new agreement; and so much of the sinking fund available for principal as will fairly insure payment of their lessened principal when due. This means that, during insolvency, each year's taxes levied for indebtedness, being for interest and principal, ought to have been distributed pro rata according to the original principal of the indebtedness as if unrefunded as between the two classes of creditors, that part belonging to each class being used so far as necessary to pay accrued interest actually due, and the remainder put into a sinking fund for the payment of principal in that class. See City of Austin v. Cahill, supra. This has not been done, the reduced interest due on refunded bonds having been paid in full, and no principal or interest paid on the unre-

funded bonds. What ought to have been done each year ought to be done now as a matter of accounting in dealing with the fund on hand. The pro rata that ought to have been paid each year to the unrefunded debts, but was not, ought to be ascertained and set apart out of the accumulated fund now on hand. This part, if more than sufficient to pay accrued interest, would go to pay principal which is due on unrefunded obligations. We make no effort to work out details, leaving them to the consideration of the trial court. It has been now nearly two years since the trial. It is argued that property values have been increasing and that assessments are too low. It may be well to look into this matter before fixing any formula for pro-rating future tax levies, and our present rulings are not intended to prejudice that.

■ 6. The allowance of expenses of suit made to the class intervenors out of the sinking fund before its apportionment is not correct. Only those who share the benefit of the intervenors' effort may be required to contribute. The amount allowed may also need revision in the light of the eventual outcome of the case.

The final judgment rendered is reversed and set aside and the cause remanded for further proceedings not inconsistent herewith.